******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# OFFICE OF CHIEF DISCIPLINARY COUNSEL *v.* ENRICO VACCARO
## (AC 47336)

Cradle, C. J., and Elgo and Moll, Js.

*Syllabus*

The respondent attorney filed a petition for certification to appeal to the Supreme Court from this court's judgment reversing the trial court's judgment ordering the disbursement of certain funds to the respondent (IOLTA case). The Supreme Court granted certification in part and remanded the case to this court for consideration of whether the appeal should be dismissed and the trial court's judgment vacated in light of the Supreme Court's decision in *Office of Chief Disciplinary Counsel* v. *Vaccaro* (353 Conn. 793) (due process case). *Held*:

This court concluded that the appeal from the judgment in the IOLTA case was not moot, as, because the issues presented in the IOLTA case were wholly separate from, and independent of, the allegations of professional misconduct that gave rise to the presentment underlying the due process case, the Supreme Court's reversal in that case did not affect this court's judgment in the IOLTA case, and, accordingly, the respondent's appeal to the Supreme Court in the IOLTA case should not be dismissed, and neither this court's earlier decision in the IOLTA case nor the trial court's underlying judgment should be vacated.

Argued June 1—officially released August 11, 2026

*Procedural History*

Presentment by the petitioner for the alleged professional misconduct of the respondent, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abrams, J.*; judgment suspending the respondent from the practice of law for ninety days and ordering the appointment of a trustee; thereafter, the court, *Hon. Brian T. Fischer*, judge trial referee, ordered the disbursement of certain funds to the respondent, and the petitioner appealed to this court, *Cradle, C. J.,* and *Alvord* and *Elgo, Js.*, which reversed the judgment of the trial court; subsequently, the respondent filed a petition for certification to appeal to the Supreme Court, which granted certification in part and remanded the case to this court for consideration of whether the appeal should be dismissed and the trial court's judgment vacated in light of the Supreme Court's decision in *Office of Chief*

*Disciplinary Counsel* v. *Vaccaro*, 353 Conn. 793, 347 A.3d 856 (2025).

*Leanne M. Larson*, first assistant chief disciplinary counsel, for the appellant (petitioner).

*Alexander T. Taubes*, for the appellee (respondent).

*Opinion*

PER CURIAM. This case is before us on remand from our Supreme Court with direction to consider whether the appeal should be dismissed and the trial court's underlying judgment vacated "in light of [the Supreme Court's] decision in *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 353 Conn. 793, 347 A.3d 856 (2025) [(*Vaccaro I*)]." *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 354 Conn. 915, 916, 351 A.3d 410 (2026).[1] In his petition for certification to appeal to the Supreme Court, the respondent, Enrico Vaccaro, claimed, inter alia, that this court's judgment in this appeal "must be vacated as moot" based on the Supreme Court's "revers[al] [of] the underlying disciplinary misconduct finding" in *Vaccaro*

---

[1]Specifically, the Supreme Court ordered: "The respondent's petition for certification to appeal from the Appellate Court, [*Office of Chief Disciplinary Counsel* v. *Vaccaro*] 236 Conn. App. 153 [347 A.3d 294 (2025)] (AC 47336), is granted as to the respondent's claim of justiciability and denied without prejudice as to the other issues presented for review. It is further ordered that the case is remanded to the Appellate Court for consideration of whether it should dismiss the appeal and vacate the trial court's judgment in light of this court's decision in *Office of* [*Chief*] *Disciplinary Counsel* v. *Vaccaro*, [supra, 353 Conn. 793]." *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 354 Conn. 915–16.

In turn, this court ordered: "In accordance with the Supreme Court's Corrected Order on Petition for Certification to Appeal dated February 26, 2026, and in light of its decision in *Office of* [*Chief*] *Disciplinary Counsel* v. *Vaccaro*, [supra] 353 Conn. 793 . . . the parties are hereby ordered, sua sponte, to file supplemental memoranda of no more than 2000 words, on or before April 2, 2026, addressing whether this [c]ourt should vacate its opinion in *Office of Chief Disciplinary Counsel* v. *Vaccaro*, [supra, 236 Conn. App. 153], dismiss the petitioner's appeal as moot, and vacate the trial court's judgment. See *Thornton* v. *Jacobs*, 339 Conn. 495, 502 n.5 [261 A.3d 738] (2021)."

*I* because it "eliminat[ed] the predicate upon which [this court's judgment] was based."[2] We disagree.

In *Vaccaro I*, the allegations of misconduct giving rise to the underlying presentment stemmed from the respondent's representation of a client in a personal injury case in which his alleged inaction resulted in the dismissal of that case with prejudice. *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 353 Conn. 799. The Statewide Grievance Committee and its reviewing committee found, by clear and convincing evidence, that the respondent had failed to act with diligence and to communicate adequately with his client, in violation of rules 1.3 and 1.4 (a) (2) through (4) of the Rules of Professional Conduct. Id., 800. The respondent did not appeal from that determination. Id., 801. In accordance with the reviewing committee's directive, the petitioner, the Office of Chief Disciplinary Counsel, thereafter filed a presentment in the Superior Court.

The trial court, *Abrams, J.*, thereafter conducted a presentment hearing, limited to the issue of the appropriate discipline for the misconduct found by the reviewing committee. Id. The court expressly declined to consider the respondent's due process claim, despite his attempts to raise it. Id. During the hearing, both parties presented evidence concerning aggravating and mitigating factors. Id. In particular, the respondent testified about the delays that were the basis for his motion to dismiss before the reviewing committee. Id., 801–802. On August 29, 2022, after considering the evidence, the trial court issued a decision suspending the respondent from the practice of law for ninety days. In addition, the court (1) appointed a trustee to protect the interests of the respondent's clients and (2) ordered the respondent not to disburse, transfer or withdraw any funds from any

---

[2] "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Barnes*, 175 Conn. App. 681, 686, 168 A.3d 530 (2017).

clients' funds, any Interest on Lawyers' Trust Account (IOLTA account), or any fiduciary accounts.

The respondent appealed to this court, arguing, inter alia, that the trial court erred in failing to consider his claim that his due process rights were violated by the delay in the underlying disciplinary proceedings. *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 226 Conn. App. 75, 78, 317 A.3d 785 (2024), rev'd, 353 Conn. 793, 347 A.3d 856 (2025). This court affirmed the judgment, concluding, inter alia, that the respondent was precluded from raising his due process claim at his presentment hearing in the Superior Court because he did not appeal, pursuant to Practice Book § 2-38 (a), from the decision of the Statewide Grievance Committee, which had reviewed and upheld the determination of its reviewing committee. Id., 84–85.

On October 15, 2024, the Supreme Court granted the respondent's petition for certification to appeal, limited to whether this court had correctly concluded that the respondent's failure to appeal from the decisions of the Statewide Grievance Committee and its reviewing committee "precluded him from raising, upon his presentment to the trial court, his claim that delays in the underlying grievance proceedings resulted in a denial of due process." *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 350 Conn. 907, 323 A.3d 1092 (2024).

Meanwhile, the respondent issued numerous checks from his IOLTA account payable to himself in violation of the trial court's August 29, 2022 order. *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 236 Conn. App. 153, 156, 347 A.3d 294 (2025). As a result, on September 28, 2022, the trial court, *Abrams, J.*, ordered the Statewide Grievance Committee to conduct an audit of the respondent's IOLTA account for the period from January 1 through September 28, 2022. Id. There were numerous hearings concerning the audit, at which the certified bookkeeper retained by the respondent to assist him with the audit testified, inter alia, that her accounting revealed a balance of $226,121.96 held in

the respondent's IOLTA account that had been held in the account since before 2017 and could not be allocated to any client file or the respondent as fees earned or costs incurred. Id. The court, *B. Fischer, J.*, ordered, among other things, that the balance of the funds totaling $226,121.96 held in the respondent's IOLTA account be placed in escrow and that the parties submit briefs addressing the proper distribution of the funds. Id., 157.

After the parties filed their respective briefs, the court issued a memorandum of decision wherein it ordered that the funds be returned to the respondent. Id. The court rejected the petitioner's argument that there is a presumption under rule 1.15 of the Rules of Professional Conduct that funds held in an IOLTA account belong to clients. Id. The court further found that the petitioner did not satisfy its burden of establishing a prima facie case that the funds are abandoned property that should escheat to the state in accordance with General Statutes § 3-61a. Id., 158. The court found that, although there was no dispute as to the existence of the funds and that they had been held in the respondent's IOLTA account for more than seven years without any action being taken that would overcome the presumption of abandonment, the petitioner had not demonstrated that the funds in the IOLTA account had been held by the respondent in a fiduciary capacity for the benefit of another person. Id. The court further found that, even if the petitioner had established a prima facie case, there was sufficient evidence for the respondent to rebut the presumption that the funds were abandoned in that there was credible testimony from the bookkeeper retained by the respondent that the funds had been in the respondent's IOLTA account since 2017, the funds could not be allocated to any client file, and her accounting revealed no improper use of the funds. Id.

The petitioner subsequently filed this appeal from the court's judgment. On October 28, 2025, this court reversed the trial court's judgment, ruling that the record was "devoid of any evidence that the funds [in

the respondent's IOLTA account] were fees earned by the respondent" and, therefore, the respondent failed to meet his burden of demonstrating that he was entitled to those funds. Id., 165–66. This court also ruled that the trial court erred in rejecting the petitioner's argument that the funds should escheat to the state pursuant to §3-61a, stating that there was no evidence presented to prove that the funds belonged to the respondent, and, thus, they were presumed to belong to the respondent's clients or third parties and necessarily were held in a fiduciary capacity pursuant to rule 1.15 of the Rules of Professional Conduct. Id., 166–67.

On December 23, 2025, the Supreme Court issued its opinion in the respondent's certified appeal in *Vaccaro I*, in which the issue was whether this court correctly concluded that the respondent's failure to appeal from the decisions of the Statewide Grievance Committee and its reviewing committee precluded him from raising, upon his presentment to the Superior Court, his claim that delays in the underlying grievance proceedings resulted in a denial of due process. *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 353 Conn. 796. The Supreme Court agreed with this court that, in cases in which the Statewide Grievance Committee or a reviewing committee designates a case for presentment pursuant to Practice Book §2-47 (d) (1), a respondent who seeks to challenge a committee's ultimate finding of misconduct or any subsidiary ruling made in connection with a misconduct finding must do so through an appeal to the Superior Court authorized by Practice Book §2-38. Id., 798. Additionally, §2-47 (d) (2) requires the Superior Court to adjudicate that appeal before turning to the issue of what discipline, if any, is appropriate. Id., 817. The Supreme Court also determined that, once the appeal period under §2-38 lapses without action, the committee's decision, including its interlocutory rulings, is final, and the Superior Court's authority at presentment is confined under §2-47 (d) (1) to determining the appropriate disciplinary action to be taken as a result of the respondent's current misconduct and cumulative

disciplinary history. Id. The Supreme Court nevertheless concluded that the language and organization of §§ 2-38 and 2-47 (d) created a lack of clarity regarding the proper procedure for challenging findings of misconduct and for obtaining appellate review of constitutional claims in cases in which presentment to the Superior Court is directed pursuant to § 2-47 (d) (1), and that lack of clarity, coupled with concerns of fundamental fairness, required that this court's judgment be reversed and that the case be remanded to this court with direction "to reverse the trial court's judgment and to remand the case to the trial court to afford the respondent an opportunity to adjudicate the due process claim as if he had filed an appeal pursuant to § 2-38 (a)." Id., 798.

The respondent thereafter filed with the Supreme Court a petition for certification to appeal, seeking review of this court's judgment in this appeal. As noted herein, the respondent argued in his petition for certification, inter alia, that "the Appellate Court's judgment ordering escheat of $226,121.96 from [the respondent's] IOLTA account must be vacated as moot, where [the Supreme Court] has since reversed the underlying disciplinary misconduct finding in [*Vaccaro I*], thereby eliminating the predicate upon which the escheat order was based." The Supreme Court granted certification as to that ground and remanded the case to this court to consider it.[3] *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 354 Conn. 916.

In his supplemental brief, the respondent argues: "In [reversing the judgment of the trial court and ordering that the funds at issue escheat to the state], this court relied on what it characterized as [the respondent's] unchallenged disciplinary violations: the opinion invoked those violations to shift the burden of proof to the respondent, to presume that unidentified IOLTA balances belong to clients, and to conclude that returning the funds would reward the failure to maintain the

---

[3]The Supreme Court denied without prejudice the respondent's petition for certification as to the remaining grounds asserted therein.

proper records. . . . The suspension order that gave rise to the IOLTA restriction—the very restriction whose alleged violation is the claimed basis for the escheat proceeding—has been directed to be reversed. The analytical framework of [this appeal] rests on premises that are now in active dispute."

As noted herein, the petitioner's allegations of the respondent's misconduct that gave rise to the underlying presentment in *Vaccaro I* concerned the respondent's representation of a client in a personal injury action. The proceedings that gave rise to the present appeal stem from an audit of the respondent's IOLTA account. Although the audit was provoked by the respondent's noncompliance with the court's order in *Vaccaro I* that he not issue any checks from his IOLTA account, the reversal of the judgment in *Vaccaro I* had nothing to do with the audit. Moreover, it had nothing to do with the petitioner's claims in this appeal that the trial court erred in determining that there was sufficient evidence in the record to support its conclusion that the funds at issue were fees earned by the respondent and should be returned to him and that the funds at issue should escheat to the Office of the Treasurer's Unclaimed Property Division. Because the issues presented in this appeal are wholly separate from, and independent of, the allegations of professional misconduct that gave rise to the presentment underlying *Vaccaro I*, our Supreme Court's reversal in that case does not affect this court's judgment in this appeal. We therefore conclude that this appeal is not moot. Accordingly, the respondent's appeal to the Supreme Court should not be dismissed, and neither this court's earlier decision in this appeal nor the trial court's underlying judgment should be vacated.